# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------------

| | | |
|---|---|---|
| **HEATHER SHEPHERD,** | : | |
| **Plaintiff,** | : | **CASE NO.** |
| | : | **3:12CV103** |
| **v.** | : | |
| | : | |
| **BLUE SKY STUDIOS, INC., TWENTIETH** | : | **COMPLAINT** |
| **CENTURY FOX FILM CORPORATION, and** | : | |
| **KEITH STICHWEH, in his individual and** | : | |
| **official capacities,** | : | **Jury Trial Demanded** |
| **Defendants.** | : | |

---------------------------------------------------------------

Plaintiff Heather Shepherd ("Ms. Shepherd" or "Plaintiff"), by and through her undersigned counsel, Madsen, Prestley & Parenteau LLC, as and for her Complaint in this action against Defendants Blue Sky Studios, Inc. ("Blue Sky" or the "Company"), Twentieth Century Fox Film Corporation ("20th Century Fox") (together, "Corporate Defendants"), and Keith Stichweh ("Defendant Stichweh") (collectively, "Defendants"), hereby states and alleges as follows:

## NATURE OF THE CLAIMS

1.      Ms. Shepherd brings this action for declaratory, injunctive and equitable relief, as well as for monetary damages, to redress Defendants' unlawful employment practices and harassment committed against her due to her sex and in retaliation for her complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Connecticut Fair Employment Practices Act, Connecticut Gen. Stat. §§ 46a-51 *et seq.* ("CFEPA").

2.      Specifically, during her employment at Blue Sky, Ms. Shepherd has been forced to work in a hostile work environment where she has been subjected to repeated acts of discrimination, intimidation, sexual harassment, as well as constant and humiliating verbal abuse

by her supervisor, Defendant Keith Stichweh, and others based on her gender.  Moreover,

Defendants have unlawfully retaliated against Ms. Shepherd because she has repeatedly

complained about the gender discrimination and harassment being committed against her in the

workplace.

3.     At all times, Defendants' conduct was knowing, wanton, willful and/or showed a

reckless disregard for which Ms. Shepherd is entitled to an award of punitive damages.  Such

conduct has caused, and continues to cause, Ms. Shepherd to suffer substantial non-economic

damages, permanent harm to her professional and personal reputations and career prospects, and

severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights.

The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law

pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because Blue Sky is a

corporation doing business in the State of Connecticut and is subject to personal jurisdiction in

this district, and a substantial part of the events giving rise to the claims herein occurred in the

State of Connecticut.

## PROCEDURAL REQUIREMENTS

6.     Plaintiff has complied with all statutory prerequisites to her Title VII and CFEPA

claims, having filed a charge of discrimination with the Connecticut Commission on Human

Rights and Opportunities ("CHRO") on or about January 28, 2011.  Plaintiff's charge of

discrimination was shared by the CHRO with the Equal Employment Opportunity Commission ("EEOC").

7.      On or about October 26, 2011, Plaintiff received notice that the CHRO had released jurisdiction over their complaints.  This Complaint is being filed within 90 days of Plaintiff's receipt of the CHRO's release of jurisdiction notice.

8.      On or about December 23, 2011, Plaintiff was issued a right-to-sue letter by the EEOC.  This complaint is being filed within 90 days of Plaintiff's receipt of the right-to-sue letter.

9.      Pursuant to Conn. Gen. Stat. §46a-103, Plaintiff will serve a copy of this Complaint upon the CHRO at the same time the Complaint is served on Defendants.

## PARTIES

10.      Plaintiff Heather Shepherd is a female employee of Blue Sky, and currently resides in New York County, New York.  At all relevant times, Plaintiff has met the definition of an "employee" under all applicable statutes.

11.      Defendant Blue Sky is a wholly owned subsidiary of Fox Filmed Entertainment, a division of News Corporation, with its principal offices located at 1 American Lane, Greenwich, Connecticut.  At all relevant times, Blue Sky has met the definition of an "employer" under all applicable statutes.

12.      Defendant 20th Century Fox is a wholly owned subsidiary of Fox Filmed Entertainment, a division of News Corporation, with its principal offices located at 10201 West Pico Boulevard, Los Angeles, California.  Defendant 20th Century Fox shares legal and human resources functions and personnel with Blue Sky.  Employees of 20th Century Fox have met with Ms. Shepherd in Blue Sky's Connecticut office on a number of occasions in response to Ms.

Shepherd's repeated complaints concerning her treatment by Defendant Stichweh and other employees of Blue Sky.

13.     Defendant Stichweh is the head of the Character Simulation Department at Blue Sky and was Ms. Shepherd's immediate supervisor from 2009 to 2011.  In that capacity, he controlled Ms. Shepherd's employment with Blue Sky, and participated directly in the gender discrimination, sexual harassment, intimidation, verbal abuse, and unlawful retaliation committed against her.  Upon information and belief, Defendant Stichweh is a resident of New York.

**FACTUAL ALLEGATIONS**

I.    **Heather Shepherd's Employment with Blue Sky**

14.     Heather Shepherd started work at Blue Sky in March 2009 as a modeler/sculptor on a temporary basis, creating three-dimensional images of objects for use in the Company's computer-animated films, such as "Rio."  As a result of her excellent work, her temporary assignment was renewed twice, and she was hired to do modeling work for the Company's Character Simulation team on a permanent, full-time basis in or around September 2009.  Ms. Shepherd thereafter reported directly to Defendant Keith Stichweh, the Cloth Technical Director/Cloth Simulation Supervisor.

II.   **Keith Stichweh's Repeated Acts of Sexual Harassment Against Ms. Shepherd**

15.     As soon as Ms. Shepherd began working in the Character Simulation Department, Defendant Stichweh, who is married, began to sexually harass her by asking her out on dates and initiating unwelcome physical contact.  From the start, Defendant Stichweh would linger unnecessarily at Ms. Shepherd's desk, tell her she looked "pretty" and that he had assigned her work so they would work together alone in his office.  He also told Ms. Shepherd that he had never worked in an office where he was not intimately involved with a female employee.  By

way of example only, Defendant Stichweh told Ms. Shepherd, in substance, that, "I've hooked up with most of the women I've worked with."

16.     Defendant Stichweh also sent Ms. Shepherd a series of personal emails, text messages and telephone calls in which he sought to initiate an intimate relationship, and he did so at all hours of the night and weekends, including outside work hours and when Ms. Shepherd was at home in New York City.  Defendant Stichweh also repeatedly discussed his dissatisfaction with his marriage with Ms. Shepherd.

17.     During a team excursion to New York City in or around early December 2009, Defendant Stichweh asked Ms. Shepherd to join him for a drink alone after the team had dinner together.  Once they were away from the rest of the team, Defendant Stichweh poured out his feelings for Ms. Shepherd, and pressed her to enter into a sexual relationship with him, which Ms. Shepherd reluctantly agreed to do.

18.     Ms. Shepherd repeatedly attempted to end her brief relationship with Defendant Stichweh, who was her boss, but he refused to accept it.  Defendant Stichweh would become agitated or tearful whenever Ms. Shepherd broached the subject of breaking off the relationship, telling her about his estrangement from his wife and his desire for a relationship that would spare him having to resort to hiring a prostitute.  One on occasion, after a business event in New York City, Defendant Stichweh went so far as to grab Ms. Shepherd against her will and kiss her over her objections.  During their relationship, Defendant Stichweh also asked Ms. Shepherd if she was dating other men and often checked up on her whereabouts at all hours of the night and on weekends.

19.     In January 2010, Ms. Shepherd ended her relationship with Defendant Stichweh completely.  From that point forward, Defendant Stichweh's conduct towards Ms. Shepherd

became increasingly hostile and retaliatory, as he engaged in repeated unlawful acts of intimidation, verbal abuse and humiliation.  Ms. Shepherd, fearing for her job, was forced to try to calm Defendant Stichweh down, and appealed to him to stop the constant harassment and refrain from undermining her position at the Company.

### III.   Defendant Stichweh's Repeated Acts of Unlawful Retaliation Against Ms. Shepherd

20.     During the several months after their brief relationship ended, Defendant Stichweh engaged in gradually escalating harassing, demeaning and volatile conduct toward Ms. Shepherd, including sending her harsh and intimidating emails and text messages, subjecting her to frequent in-person confrontations and shouting, as well as engaging in other inappropriate communications attempting to rekindle their sexual relationship.  By way of example only, Defendant Stichweh regularly exploded verbally at Ms. Shepherd and insulted her, calling her "nuts" and "stupid," among other derogatory names which Ms. Shepherd found offensive. Defendant Stichweh also at one point gave Ms. Shepherd a supposedly humorous mock job interview checklist for vetting people for potential sexual encounters.

21.     Ms. Shepherd informed Defendant Stichweh more than once, including in emails, that she would have to bring his behavior to the attention of Human Resources if it did not stop. However, Mr. Stichweh refused to comply, choosing instead to continue to harass, demean and retaliate against Ms. Shepherd.

22.     By way of example only, Defendant Stichweh threatened Ms. Shepherd's position at the Company by making comments which intimated that he could do whatever he wanted to her, including placing her in a different department, and telling her that men take advantage of women all the time and no one cares.

23.     On or around June 1, 2010, Ms. Shepherd received a positive performance evaluation and a pay raise.  However, the day before, on or around May 31, 2010, Defendant Stichweh physically threw the performance evaluation at Ms. Shepherd when she came into his office at his request, which caused Ms. Shepherd to become concerned for her safety.  During this violent encounter, Defendant Stichweh remarked to Ms. Shepherd that the fact that she might report his outrageous conduct to Human Resources only showed that she was ungrateful for the positive performance evaluation and pay raise he had obtained for her.

24.     Realizing that her health and safety were now endangered because of Defendant Stichweh's increasingly volatile and hostile behavior towards her, Ms. Shepherd approached the former Coordinator of the Character Simulation team, Jennifer Kegel, later that day and told her about the constant verbal harassment and abuse that she had been experiencing from him.  Ms. Shepherd also informed Ms. Kegel that Defendant Stichweh did not engage in similar conduct towards any of the male employees at Blue Sky.  Ms. Kegel's only response was that, although Defendant Stichweh did single Ms. Shepherd out for abusive treatment, Ms. Shepherd should mind her own business.

25.     Ms. Shepherd also brought Defendant Stichweh's aggressive, hostile, and intimidating behavior to the attention of the Company in her upward review of Defendant Stichweh, which she was required to write around the same time as her own performance review. The Company failed to respond to her complaints of harassment despite being put on notice.

26.     In or around June 2010, as Ms. Shepherd finally began to speak out about the discriminatory, harassing and retaliatory treatment she was suffering, Defendant Stichweh's abusive conduct towards Ms. Shepherd became more intense.  By way of example only, Defendant Stichweh arbitrarily, without consulting or warning Ms. Shepherd, took away her

modeling and sculpting job duties.  Instead, Stichweh reassigned Ms. Shepherd to a new

Technical Director role working on shots for production, a character simulation job in which she

had no experience and which required her to learn an entirely new set of specialized technical

skills animating characters and objects.

27.     Defendant Stichweh further unlawfully retaliated against Ms. Shepherd by pulling

her off of development work for upcoming films and projects, while falsely claiming that she

was not assigned to such projects despite emails Ms. Shepherd had received indicating

otherwise.  Further, when Ms. Shepherd mentioned to Defendant Stichweh that her work

assignments were drying up, she stopped receiving the weekly assignment sheet for her team,

which listed each employee's assignments.

28.     After Ms. Shepherd's modeling work was taken away from her, Defendant

Stichweh's Character Simulation department began using a male employee from the Modeling

Department, Shaun Cusick, to do modeling work right around the time Ms. Shepherd's role was

altered.  Furthermore, Ms. Shepherd was also assigned to train another male employee, Haven

Cousins, to do modeling work for the Character Simulation department, just as Ms. Shepherd's

own modeling work was being taken away unlawfully.

29.     Throughout this time, Defendant Stichweh's verbal abuse and intimidation of Ms.

Shepherd continued unabated.  By way of example only, Mr. Stichweh said that a "monkey"

could do Ms. Shepherd's new Technical Director job, called her "stupid" and an "idiot," and

repeatedly threatened Ms. Shepherd with termination.

30.     Defendant Stichweh also ignored Ms. Shepherd's other concerns about the work

environment within the Character Simulation team at Blue Sky.  By way of example only, he

dismissively told her to "get headphones" when she expressed discomfort about a loud

conversation between male co-workers about the use of anti-rape female condoms in South Africa around the time of the 2010 World Cup.

31.     Nevertheless, Defendant Stichweh's unlawful harassment and retaliation continued to escalate over the course of July 2010, to the point where he routinely used obscene language towards Ms. Shepherd.  By way of example only, Defendant Stichweh told Ms. Shepherd on one occasion that "You are a stupid, naïve fuck if you think I can't do what I want." Ms. Shepherd found Defendant Stichweh's comments to be offensive and deeply humiliating. She also began to fear for her safety after this incident.

32.     In spite of these acts of intimidation and harassment, and in addition to the tremendous challenge of having to teach herself an entirely new set of job skills as a Technical Director, Ms. Shepherd continued to complete her assignments and do her job well.

**IV.     Additional Acts of Unlawful Retaliation Were Committed Against Ms. Shepherd After She Complained to the Human Resources Department About Defendant Stichweh**

33.     With her career and possibly her safety in jeopardy, Ms. Shepherd desperately needed the Company to intervene in this perilous situation.  In early August 2010, Ms. Shepherd also approached Heather Stewart, Blue Sky's Director of Human Resources, about Defendant Stichweh's improper and unlawful behavior.  Despite the very serious and detailed nature of the allegations Ms. Shepherd raised to Ms. Stewart during that first and several follow-up meetings, Ms. Stewart failed to take any notes during their conversations.  When Ms. Shepherd asked Ms. Stewart why she had not taken any notes. Ms. Stewart incredibly claimed that the Company did not handle employee complaints of discrimination and harassment by recording them in writing.

34.     Even more remarkable, Ms. Stewart went on to tell Ms. Shepherd that what occurs on Blue Sky's production floor "is none of the Human Resources Department's business,"

and that if Ms. Shepherd had an issue with something happening on her team, she should bring it to the attention of her supervisor, Defendant Stichweh, or the department's new Coordinator, Jacob Carlson.  Additionally, Ms. Stewart said that Ms. Shepherd should just walk away if she was verbally assaulted by Defendant Stichweh again.

35.     The refusal by the Human Resources department to assist or protect Ms. Shepherd from further harassment and abuse constituted an additional act of retaliation against Ms. Shepherd by Defendants.  Furthermore, Ms. Stewart performed a cursory investigation of Ms. Shepherd's very serious allegations, in which she inexplicably neglected to interview at least two key witnesses named by Ms. Shepherd during the meetings in which she again reported Defendants' unlawful conduct to the Company.  Based on such a sham investigation, it is no surprise that Ms. Stewart claimed that she "could not corroborate" Ms. Shepherd's allegations concerning harassment by Defendant Stichweh.

36.     The unlawful harassment and unlawful retaliation against Ms. Shepherd still continued even after Ms. Stewart's August 2010 investigation.  By way of example only, Defendant Stichweh subjected Ms. Shepherd to the "silent treatment" during long stretches of time, and refused to see her regarding work assignments, which undermined her ability to do her job.  Additionally, the Company offered Ms. Shepherd an inappropriate reassignment outside the Character Simulation team, which would have constituted a demotion and placed Ms. Shepherd in an unsuitable administrative position in the Scene Assembly Department.  Further, this position would have lasted only three weeks, after which time Ms. Shepherd would not have been able to return to the Character Simulation team, resulting in her termination.  Ms. Shepherd rejected this clearly retaliatory transfer.

37.     In the meantime, despite her qualifications and interest, the Company rejected Ms. Shepherd's application for a job in the Layout Department.  The Company's failure to find an adequate alternate position for Ms. Shepherd was another clear form of unlawful retaliation due to the existence of abundant modeling work at the Company at the time, for which Ms. Shepherd's established skills could have been put to use.

38.     Defendants also increasingly began to target Ms. Shepherd for baseless criticism and harsh treatment.  For example, after returning to the office from an approved doctor's appointment on or around the morning of September 20, 2010, Ms. Shepherd was told to produce a note to Assistant Coordinator Rachel Richmond in order to prove she went to the appointment. However, previously, employees were required to produce a note explaining the employee's absence only after four consecutive days out from work.  In November 2010, new department Coordinator Jacob Carlson also claimed that Ms. Shepherd took unauthorized vacation days around Thanksgiving and Christmas 2010, although all of the days previously had been approved by him.  On both occasions, Mr. Carlson had either failed to prepare formal paperwork or chose to disregard his previous approval of the days off, which, in some cases, had been confirmed through email.

39.     In late 2010, Defendant Stichweh also began to target Ms. Shepherd by excessively scrutinizing her work product.  On or around December 1, 2010, Ms. Shepherd suddenly received a negative performance evaluation for the previous six-month period.  This was the first negative criticism she received of her work performance at Blue Sky after over eighteen (18) months with the Company, and five (5) months at her new position.  Moreover, she was given no advance notice of the timing or subject of a meeting with Defendant Stichweh and Mr. Carlson regarding this evaluation, during which she was yelled at by Defendant Stichweh for

most of the meeting, and called a "liar" and "paranoid" by Carlson.  Both men also threatened

Ms. Shepherd with termination, and demanded to see her work notes.

40.    Furthermore, Ms. Shepherd was relegated to performing supposed training

exercises under the pretext of performance improvement plans, and her remaining Technical

Director projects and responsibilities were taken away and reassigned to other employees.

41.    Ms. Shepherd again sought assistance from Ms. Stewart of Human Resources

twice more in or around November and December 2010 in connection with the rising unlawful

harassment and retaliation by Defendants.  Upon information and belief, the Company took no

action to alleviate the unlawful harassment and retaliation to which Ms. Shepherd was being

subjected, and the discriminatory and unlawful conduct continued unabated.

**V.     Ms. Shepherd's Complaint to the Company's Alertline**

42.    Realizing that she could no longer seek help from any employee on the ground at

Blue Sky, Ms. Shepherd called the Company's Alertline employee hotline number on or around

January 5, 2011 to report Defendants' unlawful discrimination, harassment and retaliation.

43.    Ms. Shepherd was interviewed over the phone by Ms. Helen McDermott of the

20th Century Fox Human Resources department on or around January 13, 2011.  Despite the

very serious nature of the allegations and complaints Ms. Shepherd made, Ms. McDermott's

questions astonishingly focused on whether Ms. Shepherd had engaged in romantic relationships

with any Company employees other than Defendant Stichweh.  The balance of Ms. McDermott's

questions focused not on Ms. Shepherd's serious allegations regarding unlawful harassment,

discrimination and retaliation, but instead on issues raised by Ms. Shepherd's managers

concerning her vacation time.  Later, on or around January 21, 2011, Ms. Shepherd met with

20th Century Fox Human Resources Manager Rob McClary, whose questions also revolved

around her supposed violation of Company policy regarding holiday and vacation time, which Ms. Shepherd vehemently denies.

**VI.**     **The Retaliation and Unlawful Discrimination Committed Against Ms. Shepherd Continued After Ms. Shepherd Files a Charge with the CHRO and EEOC**

44.     On or about January 28, 2011, upon realizing that the complaints she made to 20th Century Fox's Alertline about the unlawful discrimination, harassment and retaliation she was being subjected to would not be seriously investigated and addressed, Ms. Shepherd filed a charged of discrimination with the Connecticut Commission of Human Rights and Opportunities (CHRO), which shared the complaint with the federal Equal Employment Opportunities Commission (EEOC). Defendants' unlawful treatment and retaliation against Ms. Shepherd continued undeterred after these filings.

45.     For example, beginning in early 2011, Ms. Shepherd's responsibilities were reduced to duplicating already-completed shots for a film, "Rio," that was no longer in production, even though Ms. Shepherd previously had been assigned to work on the Company's upcoming films, such as "Ice Age 4." From early January 2011 until around May 2011, Ms. Shepherd did not receive any substantive work in connection with the Company's current projects, and instead was made to complete a series of test assignments with the supposed purpose of evaluating her job skills in a position to which she was arbitrarily reassigned only months before.

46.     Despite satisfactorily completing these onerous tests, Ms. Shepherd continued to be the target of unlawful retaliation. Ms. Shepherd pleaded with Mr. Carlson for an explanation of why she was denied new assignments, and for an opportunity to meet so she could present her ideas about expanding her skill set and get a detailed account of the goals of the training. Mr.

Carlson stonewalled her for weeks, telling Ms. Shepherd that this would be discussed only with "HR present."

47.     Furthermore, Ms. Shepherd was told by Human Resources Department representatives before various meetings that she was not permitted to speak freely, particularly in front of Mr. Carlson, regarding her past relationship with Defendant Stichweh, and that if she did do so, her job would be in jeopardy.  By way of example only, one such incident occurred on or about February 11, 2011, before Ms. Shepherd met with Defendant Stichweh, Mr. Carlson, and Mr. McClary.  Under this threat and restriction, Ms. Shepherd had to navigate a meeting with senior personnel from the Company and 20th Century Fox, during which she learned that the retaliatory training/performance improvement plan had been extended even after she had already undergone weeks of supposed evaluation.  Ms. Shepherd also has been chilled by Defendants' unlawful retaliatory threats and actions in how she responds to inquiries from her coworkers regarding her assignments and unusual training requirements, fearing that anything she says may have an additional adverse impact on her employment status.

48.     Significantly, the only other employee required to undergo similar tests to those imposed on Ms. Shepherd was Lauren Carr, who also was the only other female employee on Defendant Stichweh's Character Simulation team.

49.     Modeling skills like those Ms. Shepherd possesses were in demand at the Company in connection with the ramping up of production work on Blue Sky's upcoming feature films, including "Ice Age 4."  Moreover, Sean Cusack and Haven Cousins, the employees tasked with doing modeling work for the Character Simulation department in 2010, one of whom was trained by Ms. Shepherd, also continued to do modeling work for Defendant Stichweh's Character Simulation team in 2011.

50.     In or around May 2011, the Company transferred Ms. Shepherd out of Defendant Stichweh's Character Simulation department and back into the Modeling Department, where she has received very positive feedback on her performance.

51.     In spite of this transfer, the Company continues to treat Ms. Shepherd differently than her coworkers.  By way of example only, Company representatives have told Ms. Shepherd that her name was to be removed entirely from the Company's website rather than moved from her old department to the new department, that her assignment to the Modeling department is somehow temporary, and that she should not submit requests for paid time off through the Company's electronic system, as other employees do, but rather needs to submit her vacation request to the department Coordinator and separately obtain approval from her supervisor and three Human Resources officials.

## VII.    Ms. Shepherd's Civil Case in New York

52.     On or about October 5, 2011, Plaintiff filed a complaint against Defendants in New York State Supreme Court, New York County (the "New York Complaint"), alleging discrimination, harassment and retaliation against Defendants in violation of the New York State Human Rights Law and New York City Human Rights law.

53.     On or about November 15, 2011, Defendants moved to dismiss four of the six counts in the New York Complaint in their entirety, and the remaining two counts in part, on strictly jurisdictional grounds.  The motion is fully briefed and currently pending.

54.     Despite the filing of the New York Complaint, Defendants continue to discriminate, harass and retaliate against Ms. Shepherd.  For example, Defendants continue to single out and subject Ms. Shepherd to an incredibly arduous paid time off request process, have

denied Ms. Shepherd an annual and/or performance based raise to which she is entitled, and have given Ms. Shepherd an unjustified negative performance review.

55.     Furthermore, Defendants have unlawfully retaliated against Ms. Shepherd by consistently postponing, cancelling, or outright ignoring her requests for meetings with her supervisors and other members of her team to discuss ongoing projects and deadlines.  This pattern and practice of unlawful retaliation has had an adverse affect on Ms. Shepherd's ability to do her job.

56.     As a result of Defendants' unlawful gender discrimination, sexual harassment, and retaliation, Ms. Shepherd has suffered, and continues to suffer, severe emotional distress, humiliation, depression, stress, and loss of self-esteem.

57.     Trying to maintain her employment and survive Defendants' unrelenting and unlawful gender discrimination, harassment, verbal abuse, and acts of intimidation and unlawful retaliation have taken a tremendous emotional and psychological toll on Ms. Shepherd. Specifically, Ms. Shepherd often feels worthless, suffers from depression and anxiety, and experiences frequent bouts of crying, which has led her to see a psychologist.  She has also been diagnosed with an ulcer.

58.     At all times relevant to this Complaint, Defendant Stichweh knew, or should have known, that his violent, discriminatory and harassing conduct would cause severe emotional and mental distress to Ms. Shepherd.  Even after Ms. Shepherd's internal complaints, Defendant Stichweh continued to treat her with hostility and disdain on the basis of her gender, and unlawfully retaliated against her.  Defendants' acts of retaliation, and Blue Sky and 20th Century Fox's failure to take any meaningful action to end the unlawful discrimination against,

harassment of, and retaliation against Ms. Shepherd were wanton, reckless, and intentional, for which Ms. Shepherd is entitled to receive an award of punitive damages.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Discrimination and Harassment in Violation of Title VII**
**Against Blue Sky and 20th Century Fox)**

59.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

60.     Corporate Defendants Blue Sky and 20th Century Fox have discriminated against Plaintiff and subjected her to harassment on the basis of her sex (female) in violation of Title VII by denying to her equal terms and conditions of employment, including, but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment, including sexual harassment.

61.     Corporate Defendants have discriminated against Plaintiff and subjected her to harassment on the basis of her sex (female) in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, acts of violence, physical intimidation, verbal abuse and derogatory comments by Defendant Stichweh towards Plaintiff.

62.     As a direct and proximate result of Corporate Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

63.     As a direct and proximate result of Corporate Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of damages.

64.     Corporate Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Ms. Shepherd's federally protected rights under Title VII, for which Ms. Shepherd is entitled to an award of punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Title VII Against Blue Sky and 20th Century Fox)**

65.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

66.     Corporate Defendants Blue Sky and 20th Century Fox have unlawfully retaliated against Plaintiff in violation of Title VII for her complaints regarding the discriminatory conduct and acts of intimidation and violence to which she has been subjected by, <u>inter alia</u>, taking away her job duties relating to modeling work, in which she was experienced, and giving her character simulation work in which she had no experience, repeatedly failing to respond to her complaints regarding the conduct of Defendant Stichweh and Jacob Carlson, over-scrutinizing her work, creating a baseless purported training program for Plaintiff in order to establish a pretext for potentially terminating her, requiring Plaintiff to adhere to an approval process for using vacation days that differed from Company policies, and otherwise interfering with the performance of her job.

67.     As a direct and proximate result of Corporate Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

68.     As a direct and proximate result of Corporate Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

69.     Corporate Defendants' unlawful and retaliatory actions constitute malicious, willful, wanton and/or reckless indifference to Ms. Shepherd's federally protected rights under Title VII, for which Ms. Shepherd is entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Discrimination and Harassment in Violation of CFEPA**
**Against Blue Sky and 20th Century Fox)**

70.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

71.     Corporate Defendants Blue Sky and 20th Century Fox have discriminated against Plaintiff and subjected her to harassment on the basis of her sex (female) in violation of the CFEPA by denying to her equal terms and conditions of employment, including, but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment, including sexual harassment.

72.     Corporate Defendants have discriminated against Plaintiff and subjected her to harassment on the basis of her sex (female) in violation of the CFEPA by fostering, condoning,

accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, acts of violence, physical intimidation, verbal abuse and derogatory comments by Defendant Stichweh towards Plaintiff.

73.     As a direct and proximate result of Corporate Defendants' unlawful and discriminatory conduct in violation of the CFEPA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

74.     As a direct and proximate result of Corporate Defendants' unlawful and discriminatory conduct in violation of the CFEPA , Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

75.     Corporate Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless violations of the CFEPA, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of the CFEPA Against all Defendants)**

76.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

77.     Defendants have retaliated against Plaintiff in violation of the CFEPA for her complaints regarding the discriminatory conduct and acts of intimidation and violence to which she has been subjected by, inter alia, taking away her job duties relating to modeling work, in

which she was experienced, and giving her character simulation work in which she had no experience, repeatedly failing to respond to her complaints regarding the conduct of Defendant Stichweh and Jacob Carlson, over-scrutinizing her work, creating a baseless purported training program for Plaintiff in order to establish a pretext for potentially terminating her, requiring Plaintiff to adhere to an approval process for using vacation days that differed from Company policies, and otherwise interfering with the performance of her job.

78.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the CFEPA , Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

79.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the CFEPA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

80.    Defendants' unlawful retaliatory actions constitute malicious, willful, wanton and/or reckless violations of the CFEPA, for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Aiding and Abetting Violations of CFEPA Against Defendant Stichweh Only)

81.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

82.    Defendant Stichweh knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and unlawful retaliation against Plaintiff in violation of the CFEPA by actively participating in the unlawful conduct set forth above.

83.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

84.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

85.     Defendant Stichweh's unlawful actions constitute malicious, willful, wanton and/or reckless violations of the CFEPA, for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of Connecticut;

B.     An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress,

humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal

dignity, and emotional pain and suffering and any other physical and mental injuries;

    E.    An award of damages to be determined at trial, plus prejudgment interest, to

compensate Plaintiff for harm to her professional and personal reputations and loss of career

fulfillment;

    F.    An award of punitive damages;

    G.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's

reasonable attorneys' fees to the fullest extent permitted by law; and

    H.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: Hartford, Connecticut this 20th day of January, 2012.

Respectfully submitted,
Plaintiff, Heather Shepherd

By:   //s// William G. Madsen
    William G. Madsen (ct09853)
    MADSEN, PRESTLEY & PARENTEAU, LLC
    44 Capitol Avenue   Suite 201
    Hartford, CT 06106
    Tel. (860) 246-2466  Fax.  (860) 246-1794
    *Attorney for Plaintiff*